[No. G041561. Fourth Dist., Div. Three. Jan. 15, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
PHILLIP DELGADO, Defendant and Appellant.

## COUNSEL

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pamela Ratner Sobeck and Raymond M. DiGuiseppe, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**IKOLA, J.**—Defendant Phillip Delgado challenges his convictions for sexual offenses against two minors. He contends he was wrongly tried in Riverside County on offenses committed in Los Angeles County. He further contends prosecution on the Los Angeles County offenses was time-barred. He also asserts the jury was tainted and the prosecutor violated his due process right by unfairly examining him on his post-*Miranda* silence.[1]

[1] *Miranda v. Arizona* (1966) 384 U.S. 436, 467–468 [16 L.Ed.2d 69, 86 S.Ct. 16024] (*Miranda*).

We affirm the judgment of conviction. Penal Code section 784.7 allows prosecution of defendant's sexual offenses in any county where any of the offenses occurred.[2] Defendant has no vicinage right to trial on the Los Angeles County offenses only in that county. Applying section 784.7 to defendant does not violate the constitutional bans against ex post facto laws. The Los Angeles County offenses were timely prosecuted within one year of the victim's report to the police. And the juror taint and due process claims are baseless and, in any event, harmless.

But we reverse as to sentence and remand for resentencing. The court was required to impose full, consecutive, determinate terms on two counts of committing forcible lewd acts on a child under 14.

## FACTS

Defendant first sexually abused Michael, his girlfriend's son, in 1990, when Michael was about six years old. Defendant fondled and orally copulated Michael several times a week. Michael and his family moved into defendant's Lakewood home around 1994, when Michael was about 10. Defendant continued sexually abusing Michael about once a week. Michael and his family moved with defendant to Lake Elsinore around 1997, where defendant continued to sexually abuse Michael. Defendant also had anal sex with Michael. Michael, his family, and defendant returned to Lakewood after about six months. Michael lived separately from defendant, but defendant continued to sexually abuse Michael during visits. Michael reported defendant's acts to his mother in 2003, whereupon he suffered an emotional breakdown and was hospitalized. His mother contacted the police, who interviewed Michael in the hospital sometime between October 22 and 28, 2003.

Defendant began molesting Ralph, a friend's son, in 2002 or 2003, when Ralph was about seven years old. Defendant would babysit Ralph and spend the night with Ralph and his mother in their Lake Elsinore home. Defendant fondled Ralph, masturbated in front of him, and forced Ralph to orally copulate defendant.

The Riverside County District Attorney filed a criminal complaint against defendant on September 13, 2004, alleging defendant sexually abused Michael and Ralph. The Riverside County District Attorney later filed a "Written Venue Agreement," whereby the Los Angeles County District Attorney consented to defendant being prosecuted in Riverside County for his offenses against Michael in Los Angeles County. (See § 784.7.) After the

---

[2] All further statutory references are to the Penal Code unless other stated.

preliminary hearing, the Riverside County District Attorney filed an information charging defendant with counts arising from his sexual abuse of both Michael and Ralph. The court denied defendant's motion to dismiss the counts related to Michael for lack of jurisdiction, violation of his venue and vicinage rights, and violation of the bars against ex post facto punishment.

A jury convicted defendant of eight counts of committing lewd acts on Michael between 1994 and 1997. (§ 288, subd. (a).) It further convicted him of one count of forcible oral copulation with Ralph (§ 269, subd. (a)(4)), one count of committing a lewd act on Ralph (§ 288, subd. (a)), and two counts of committing forcible lewd acts on Ralph (§ 288, subd. (b)(1)). It found true a multiple victim allegation pursuant to the "One Strike" law. (§ 667.61, subd. (e)(5).)

The court sentenced defendant to a total term of 67 years to life in state prison. Pursuant to the multiple victim enhancement, the court imposed consecutive terms of 15 years to life on count 3 (lewd act against Michael in 1995), count 9 (forcible oral copulation against Ralph), and count 11 (forcible lewd act against Ralph). It further imposed consecutive determinate terms of 22 years on the remaining counts.

## DISCUSSION

*Prosecuting the Los Angeles County Offenses in Riverside County Did Not Violate Defendant's Vicinage Right*

Pursuant to section 784.7, defendant was tried in Riverside County for all of the charged offenses, including those he committed in Los Angeles County. As enacted in 1998, the statute provided, "When more than one violation of Section . . . 288 . . . occurs in more than one jurisdictional territory, and the defendant and the victim are the same for all of the offenses, the jurisdiction of any of those offenses is in any jurisdiction where at least one of the offenses occurred." (Stats. 1998, ch. 302, § 1.)

Section 784.7 was amended effective 2003 to eliminate the requirement that all offenses involve the same victim. (Stats. 2002, ch. 194, § 2; see *People v. Betts* (2005) 34 Cal.4th 1039, 1058, fn. 14 [23 Cal.Rptr.3d 138, 103 P.3d 883].) Section 784.7, subdivision (a), now provides, "When more than one violation of Section . . . 288 . . . occurs in more than one jurisdictional territory, the jurisdiction of any of those offenses, and for any offenses properly joinable with that offense, is in any jurisdiction where at least one of the offenses occurred, subject to a hearing, pursuant to Section 954, within the jurisdiction of the proposed trial. At the Section 954 hearing,

the prosecution shall present evidence in writing that all district attorneys in counties with jurisdiction of the offenses agree to the venue."

Section 954 governs joinder of criminal offenses. It provides, "An accusatory pleading may charge two or more different offenses connected together in their commission . . . or two or more different offenses of the same class of crimes or offenses . . . ." (§ 954.)

■ Defendant contends standing trial in Riverside County for offenses committed against Michael in Los Angeles County violated his federal vicinage right. " '[V]icinage refers to the area from which the jury pool is drawn.' " (*Price v. Superior Court* (2001) 25 Cal.4th 1046, 1054 [108 Cal.Rptr.2d 409, 25 P.3d 618] (*Price*).) The Bill of Rights guarantees the right to trial by a jury "of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." (U.S. Const., 6th Amend.) Defendant asserts his offenses against Michael must be tried before a jury drawn from Los Angeles County, where the offenses occurred.

But as defendant concedes, the California Supreme Court has held, "the [Sixth Amendment's] vicinage clause is not applicable in a state criminal trial." (*Price, supra,* 25 Cal.4th at p. 1069.) "Nothing in the history of the Fourteenth Amendment . . . suggests to us that in making the right to jury trial applicable to the states, there was an intent to include the vicinage clause of the Sixth Amendment." (*Id.* at p. 1063.) And "[v]icinage is not a right that is fundamental and essential to the purpose of the constitutional right to jury trial, the test for incorporation from the Fourteenth Amendment . . . ." (*Id.* at pp. 1064–1065.)

Defendant complains *Price*'s reasoning is "hopelessly flawed." Be that as it may, we are bound by its plain holding. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Defendant tries to distinguish *Price* on the ground its rationale no longer applies. *Price* held the original version of section 784.7 did not violate the *state* vicinage right (see Cal. Const., art. I, § 16) because the "continuing pattern of abuse of the same victim constitutes a sufficient nexus to justify the legislative decision to permit trial of all offenses in a single county." (*Price, supra,* 25 Cal.4th at p. 1071.) It further noted, "Section 784.7 was enacted to protect repeat victims of child abuse . . . from the need to make multiple court appearances to testify against the perpetrator and to reduce the costs of separate trials." (*Id.* at p. 1055.) Defendant contends the current version of section 784.7, which was amended after *Price*, is indefensible because it abandons the nexus supplied by the same-victim requirement.

Defendant's attempt to distinguish *Price* fails for two reasons. First, he does not assert a violation of the state vicinage right. He relies solely upon the federal vicinage right. And he has no such right in a state criminal prosecution. (*Price, supra,* 25 Cal.4th at p. 1069.)

Second, *Price*'s analysis of the state vicinage right still holds under the current version of section 784.7. As *Price* noted, "The Legislature's power to designate the place for trial of a criminal offense is limited by the requirement that there be a reasonable relationship or nexus between the place designated for trial and the commission of the offense." (*Price, supra,* 25 Cal.4th at p. 1075.) Although section 784.7 now lacks a same-victim requirement, it still serves the same reasonable justification for joinder as the original version: to eliminate the need for separate trials and repeated testimony. This is true because the testimony of other child abuse victims is often cross-admissible. (See Evid. Code, § 1108, subd. (a).)

Moreover, section 784.7, subdivision (a) expressly conditions joinder on "a hearing, pursuant to Section 954" to determine whether the charged offenses were "connected together in their commission, or . . . of the same class of crimes or offenses." (§ 954.) This connection supplies the necessary "reasonable relationship or nexus between the place designated for trial and the commission of the offense." (*Price, supra,* 25 Cal.4th at p. 1075.) And defendant does not challenge the section 954 hearing in this case. Thus, even if defendant were asserting his state vicinage right, joining the Los Angeles County and Riverside County offenses pursuant to section 784.7 was reasonable and constitutional.

*Prosecuting the Los Angeles County Offenses in Riverside County Did Not Violate the Constitutional Bans on Ex Post Facto Laws*

Defendant further contends consolidating the Los Angeles County and Riverside County offenses violated the federal and state bars on ex post facto laws. (See U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.) He notes the sentence for committing a lewd act against a child under 14 is a term of three, six, or eight years. (§ 288, subd. (a).) He claims his punishment for the Los Angeles County offenses (committed between 1994 to 1997) was increased after the fact by joining the offenses pursuant to section 784.7 (as amended in 2003) because joinder made him eligible for 15-year-to-life terms pursuant to the One Strike law's multiple victim enhancement. (See § 667.61, subd. (e)(5).)

But joining defendant's Los Angeles County and Riverside County offenses did not increase his potential punishment. "[T]he ex post facto clause regulates increases in the ' " '*quantum* of punishment.' " ' [Citations.] Although no universal definition exists [citation], this concept appears limited to

substantive measures, standards, and formulas affecting the time spent incarcerated for an adjudicated crime." (*John L. v. Superior Court* (2004) 33 Cal.4th 158, 181–182 [14 Cal.Rptr.3d 261, 91 P.3d 205].) "[A]n ex post facto violation does not occur simply because a postcrime law withdraws substantial procedural rights in a criminal case. [Citation.] Even new methods for determining a criminal sentence do not necessarily involve punishment in the ex post facto sense." (*Id.* at p. 181.) Thus, "not every amendment having 'any conceivable risk' of lengthening the expected term of confinement raises ex post facto concerns." (*Id.* at p. 182.)

Applying the amended version of section 784.7 did not increase defendant's punishment for the Los Angeles County offenses beyond the term potentially applicable when he committed them. From 1994 to 1997, the One Strike law provided for a potential maximum term of 25 years to life if the defendant was convicted of violating section 288, subdivision (a), and the jury found he had a prior conviction for violating that statute. (See former § 667.61, subds. (a), (c)(4), (d)(1); Stats. 1994, ch. 447, § 1, p. 2412.) Notwithstanding section 784.7, defendant could have been tried first in Riverside County for the offenses he committed there, and then tried separately in Los Angeles County for the offenses he committed there. Under the former law, the Riverside County conviction would have subjected defendant to potential sentences of 25 years to life in the subsequent Los Angeles County trial—sentences greater than the 15-year-to-life terms imposed in this case. Thus, applying section 784.7 here did not offend the ex post facto clauses.

Defendant also contends applying section 784.7 violates the ex post facto clauses by relieving the prosecution of the burden of proving venue, lessening the quantum of evidence required to convict him, and depriving him of the lack-of-venue defense. But he does not dispute the Los Angeles County offenses occurred in Los Angeles County and the Riverside County offenses occurred in Riverside County. Thus, these ex post facto claims reduce to his meritless vicinage claim that he must be tried in the county of the offense—a claim we have already rejected.[3]

*The Los Angeles County Offenses Were Prosecuted Timely*

Defendant contends prosecution of the Los Angeles County offenses was time-barred. The limitations period for his lewd acts against Michael is six years. (§§ 288, subd. (a), 800.) The September 2004 complaint alleges defendant committed these offenses between 1994 and 1997, more than six years earlier.

---

[3] His due process claim also adds nothing to his vicinage claim and attack on *Price*. It is likewise rejected.

Defendant did not raise this claim below, but "[t]he statute of limitations is jurisdictional in nature, and it may therefore be raised at any time." (*People v. Price* (2007) 155 Cal.App.4th 987, 991, fn. 2 [66 Cal.Rptr.3d 595].) "When a charging document 'indicates on its face that the action is time-barred, a person convicted of a charged offense may raise the statute of limitations at any time. If the [appellate] court cannot determine from the available record whether the action is barred . . . it should remand for a hearing.' " (*Id.* at pp. 997–998.) The appellate record may be augmented with a complaint, arrest warrant, or other appropriate material to facilitate this determination. (*Id.* at p. 997, fn. 10.)

Section 803 sets forth exceptions to the general limitations periods. The Legislature amended section 803 effective January 1, 1994, to extend the limitations period for prosecutions of certain sexual offenses. (Stats. 1993, ch. 390, § 1, p. 2224.) These prosecutions became timely if commenced within one year of the victim's report to the police but after the normal limitations period was expired, the crime involved substantial sexual conduct, and independent, admissible evidence corroborated the victim's allegations.[4] (Former § 803, subd. (g); accord, § 803, subd. (f).)

These conditions for extending the limitations period for the Los Angeles County offenses are met. Michael was the victim of defendant's

---

[4] Former section 803, subdivision (g), provided: "Notwithstanding any other limitation of time described in this section, a criminal complaint may be filed within one year of the date of a report to a law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section . . . 288 . . . . This subdivision shall apply only if both of the following occur: [¶] (1) The limitation period specified in Section 800 or 801 has expired. [¶] (2) The crime involved substantial sexual conduct, as described in subdivision (b) of Section 1203.066, excluding masturbation which is not mutual, and there is independent evidence that clearly and convincingly corroborates the victim's allegation. No evidence may be used to corroborate the victim's allegation which would otherwise be inadmissible during trial. Independent evidence shall not include the opinions of mental health professionals."

Section 803, subdivision (f), now similarly provides: "(1) Notwithstanding any other limitation of time described in this chapter, a criminal complaint may be filed within one year of the date of a report to a California law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section . . . 288 . . . . [¶] (2) This subdivision applies only if all of the following occur: [¶] (A) The limitation period specified in Section 800, 801, or 801.1, whichever is later, has expired. [¶] (B) The crime involved substantial sexual conduct, as described in subdivision (b) of Section 1203.066, excluding masturbation that is not mutual. [¶] (C) There is independent evidence that corroborates the victim's allegation. If the victim was 21 years of age or older at the time of the report, the independent evidence shall clearly and convincingly corroborate the victim's allegation. [¶] (3) No evidence may be used to corroborate the victim's allegation that otherwise would be inadmissible during trial. Independent evidence does not include the opinions of mental health professionals."

lewd acts from 1994 to 1997, when he was under the age of 18.[5] The criminal complaint was filed in September 2004, after the general six-year limitations period had expired. The offenses involved substantial sexual conduct, including oral copulation and anal sex. (See § 1203.066, subd. (b) [defining " '[s]ubstantial sexual conduct' " as "penetration of the . . . rectum of . . . the victim . . . by the penis of the [offender] . . . [or] oral copulation"].) And independent evidence convincingly corroborated Michael's report. Michael had a "breakdown" when he told his mother about defendant and was hospitalized. Moreover, evidence of defendant's offenses against Ralph was cross-admissible to show defendant committed the offenses against Michael. (Evid. Code, § 1108, subd. (a).)

Because the extended limitations period applies, the prosecution of the Los Angeles offenses was timely. The one-year limitations period started when Michael reported defendant to the police while he was hospitalized, sometime between October 22 and 28, 2003. Prosecution commenced within one year of that date. The criminal complaint was filed in September 2004 and the arrest warrant was issued on October 14, 2004. (See § 803, subd. (f)(1) ["a criminal complaint may be filed within one year" of police report]; former § 803, subd. (g) [same]; § 804, subd. (d) [prosecution commences upon issuance of arrest warrant describing defendant with particularity]; Stats. 1984, ch. 1270, § 2, p. 4335 [adding § 804, subd. (d)].)

■ Applying the extended limitations period to the Los Angeles County offenses raises no ex post facto concern. The extension was originally set forth in former section 803, subdivision (g), which became effective January 1, 1994—before defendant committed the charged offenses. (Stats. 1993, ch. 390, § 1, p. 2224; Cal. Const., art. IV, § 8.) The ban on ex post facto laws "does not prevent the State from extending time limits for the prosecution of future offenses, or for prosecutions not yet time barred." (*Stogner v. California* (2003) 539 U.S. 607, 632 [156 L.Ed.2d 544, 123 S.Ct. 2446].)

Defendant wrongly asserts we must remand this matter for a hearing on the limitations issue. Not so. We are able to " 'determine from the available record whether the action is barred,' " obviating the need for an evidentiary hearing. (*People v. Price, supra*, 155 Cal.App.4th at p. 998.)

■ Defendant also contends the prosecution is untimely because Riverside County lacked jurisdiction over the Los Angeles offenses pursuant to section 784.7

---

[5] Because these conditions are met, defendant cannot help his cause by noting that a different statutory exception applied only if the victim was under the age of 18 at the time of the report. (See former § 803, subd. (f) ["a criminal complaint may be filed within one year of the date of a report to a responsible adult or agency by a child under 18 years of age that the child is a victim" of a specified offense]; Stats. 1993, ch. 390, § 1, p. 2224.)

until the written venue agreement was filed in September 2005. Defendant misreads the plain language of section 784.7, subdivision (a). That statute provides that the county has jurisdiction "subject to a hearing, pursuant to Section 954," at which the prosecutor must produce evidence of a written venue agreement. (§ 784.7.) Section 784.7 grants jurisdiction pending the section 954 hearing; it does not withhold jurisdiction until that hearing. And if section 784.7 were ambiguous on this point, we would harmonize it with other statutes and avoid absurd results. (*People v. Pieters* (1991) 52 Cal.3d 894, 898–899 [276 Cal.Rptr. 918, 802 P.2d 420].) It would be absurd to require prosecutors to file written venue agreements when prosecutions commence—i.e., at the same time they file criminal complaints, or as soon as the court issues arrest warrants. (See §§ 803, subd. (f), 804, subd. (d).)

*No Prejudicial Jury Taint Exists*

Defendant contends the jury was tainted by an alternate juror's comments during voir dire. The alternate juror told the court, "My son was accused of child molestation. And it turned out to be not true." The court asked whether her son was tried and acquitted or "did the prosecutor's office say, you know, there's a lack of evidence?" She replied, "There was a lack of evidence. He did a lie detector test, and in the investigation they found out that the mother of the child had remarried, and it happened with the other husband." Defense counsel had a preemptory challenge left, but used it to strike another prospective juror. The alternate juror was never seated on the actual jury panel. Still, defendant contends the alternate juror tainted the jury by implying innocent persons may take and pass lie detector tests to avoid being charged.

■ " '[W]here a verdict is attacked for juror taint, the focus is on whether there is any *overt* event or circumstance . . . which suggests a *likelihood* that one or more members of the jury were influenced by improper bias.' [Citation.] A juror who 'consciously receives outside information . . . or shares improper information with other jurors' commits misconduct. [Citation.] Jury misconduct 'raises a rebuttable "presumption" of prejudice.' " (*People v. Tafoya* (2007) 42 Cal.4th 147, 192 [64 Cal.Rptr.3d 163, 164 P.3d 590] (*Tafoya*).)

"We assess prejudice by a review of the entire record. 'The verdict will be set aside only if there appears a substantial likelihood of juror bias. Such bias can appear in two different ways. First, we will find bias if the extraneous material, judged objectively, is inherently and substantially likely to have influenced the juror. [Citations.] Second, we look to the nature of the misconduct and the surrounding circumstances to determine whether it is substantially likely the juror was actually biased against the defendant.

[Citation.] The judgment must be set aside if the court finds prejudice under either test.' [Citation.] In general, when the evidence of guilt is overwhelming, the risk that exposure to extraneous information will prejudicially influence a juror is minimized. [Citation.] An admonition by the trial court may also dispel the presumption of prejudice arising from any misconduct." (*Tafoya, supra,* 42 Cal.4th at pp. 192–193.)

It is not substantially likely the jury understood the comments as defendant suggests. The alternate juror stated the police found the true perpetrator, who was not her son. She did not imply her son was cleared simply because he passed a lie detector test. She did not state she had any special knowledge about child abuse investigations or prosecutorial charging decisions. Her comments were not inherently influential, and nothing in the record suggests they actually influenced the jury. (See *Tafoya, supra,* 42 Cal.4th at p. 192.)

Moreover, any potential jury taint was cured by the court's admonitions. The court used alternate juror's comments to reinforce the presumption of innocence. He asked the alternate juror, "Your son was accused falsely, so in your opinion it could happen, right? I mean, it could happen, there could be an accusation that could very well be false; can you accept that?" The alternate juror replied, "Yes." The court twice instructed the actual jury to decide the case based solely on the evidence. The jury is presumed to have understood and followed these instructions, dispelling any presumption of prejudice. (*Tafoya, supra,* 42 Cal.4th at pp. 192–193.)

Finally, the evidence of defendant's guilt is overwhelming. (See *Tafoya, supra,* 42 Cal.4th at p. 193.) The jury credited the victims, who testified convincingly and at length as to defendant's abuse. When Ralph's mother confronted defendant with Ralph's allegations, defendant told her, "it's not [his] fault, [Ralph] had came on to [him] first." The jury disbelieved defendant's denials. He asserts no insufficiency of the evidence claim on appeal and does not attempt to show prejudice from the alternate juror's comments. Nothing in the record suggests the jury verdict was based on the alternate juror's comments or anything else other than the ample evidence against defendant.

*The Prosecutorial Misconduct Claim Fails*

Defendant contends the prosecutor wrongly examined him about his post-*Miranda* silence. On direct examination, defendant testified he "[a]bsolutely" cooperated with the police investigating the Los Angeles County

offenses and "[a]nswered any questions they wanted me to answer."[6] He similarly testified he was "[a]bsolutely" cooperative with the police investigating the Riverside County offenses and answered "[e]very question that [he] could answer. [He] wasn't holding anything back." The court allowed the prosecution to ask defendant on cross-examination, "Well, there was a certain point where you told [an investigating officer] you were no longer willing to answer his questions; is that correct?" Defendant answered, "I—if I remember correctly, I said—I'm not exactly—what I said [*sic*]. But if I was gonna go any further, I would rather have an attorney with me."

■ "Both federal and state courts have held that the prosecution's use of a defendant's post-*Miranda* silence is a violation of federal due process. [Citations.] ' "[These cases] are founded on the notion that it is fundamentally unfair to use post-*Miranda* silence against the defendant at trial in view of the implicit assurance contained in the *Miranda* warnings that exercise of the right of silence will not be penalized. [Citation.]" ' [Citation.] The prosecutor cannot use the defendant's invocation of his right to remain silent or refusal to answer questions as evidence against him." (*People v. Champion* (2005) 134 Cal.App.4th 1440, 1447–1448 [37 Cal.Rptr.3d 122] (*Champion*).)

"An assessment of whether the prosecutor made inappropriate use of defendant's postarrest silence requires consideration of the context of the prosecutor's inquiry or argument. [Citation.] A violation of due process does not occur where the prosecutor's reference to defendant's postarrest silence constitutes a fair response to defendant's claim or a fair comment on the evidence. [Citations.] '*Griffin*[7] and *Doyle*'s[8] protection of the right to remain silent is a "shield," not a "sword" that can be used to "cut off the prosecution's 'fair response' to the evidence or argument of the defendant." ' " (*Champion, supra*, 134 Cal.App.4th at p. 1448.)

The prosecutor's cross-examination of defendant was a "fair response to defendant's claim" of full cooperation with the authorities. (*Champion, supra*, 134 Cal.App.4th at p. 1448.) Defendant opened the door to his invocation of his *Miranda* rights by testifying on direct examination he "[a]nswered any questions [the police] wanted [him] to answer" and answered "[e]very question that [he] could answer. [He] wasn't holding anything back." Defense counsel made this claim of full cooperation a cornerstone of closing argument. Counsel argued defendant "was cooperative substantially with the

---

[6] The police report states the police had read defendant's *Miranda* rights to him before the questioning.

[7] *Griffin v. California* (1965) 380 U.S. 609, 615 [14 L.Ed.2d 106, 85 S.Ct. 1229] (prosecution may not exploit a defendant's failure to testify at trial).

[8] *Doyle v. Ohio* (1976) 426 U.S. 610, 618 [49 L.Ed.2d 91, 96 S.Ct. 2240] (prosecution may not exploit a defendant's post-*Miranda* silence).

police in both cases, didn't run, didn't—wasn't difficult to get ahold of. [He] [w]as willing to speak to them. [¶] And you could take that into account in assessing his credibility. Is this somebody who just said, you know what, give me my lawyer, I'm not saying anything, no comment, screw you?" Given defendant's testimony and tactics, he cannot use his " 'right to remain silent [as] a . . . "sword" . . . to "cut off the prosecution's 'fair response' to [his] argument . . . ." ' " (*Ibid.*)

And any error would have been harmless beyond a reasonable doubt, in light of the overwhelming evidence of guilt. (*Champion, supra,* 134 Cal.App.4th at p. 1453 [*Griffin/Doyle* error reviewed pursuant to standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]].) Defendant fails to show how his testimony about invoking his *Miranda* rights during an interrogation could have prejudiced him at trial.

## The Sentence Must Be Reversed

The Attorney General contends that the court imposed unauthorized sentences on two counts of forcible lewd act against Ralph (counts 11 & 12). The court imposed an indeterminate term of 15 years to life on count 11. It imposed a consecutive determinate sentence of two years (one-third of the midterm) on count 12.

■ Section 667.6, subdivision (d), provides, "A full, separate, and consecutive term shall be imposed [for certain sexual offenses] . . . if the crimes involve . . . the same victim on separate occasions." Section 667.6, subdivision (d), "is mandatorily applicable to cases within its terms, supplanting to that extent the generally applicable consecutive sentencing scheme of section 1170.1." (*People v. Fitch* (1985) 171 Cal.App.3d 211, 214 [217 Cal.Rptr. 197].) Counts 11 and 12 involve forcible lewd acts on a child under 14 (§ 288, subd. (b)(1)), sexual offenses subject to section 667.6, subdivision (d). (See § 667.6, subd. (e)(5).) And counts 11 and 12 involve the same victim, Ralph, on separate occasions during 2002 and 2003. Thus, the court was required to impose full, consecutive, determinate terms on each count.

■ Defendant wrongly asserts the Attorney General has waived this issue by not appealing. To the contrary, the Attorney General may raise the sentencing error for the first time in connection with defendant's appeal. (*In re Renfrow* (2008) 164 Cal.App.4th 1251, 1256 [79 Cal.Rptr.3d 898].) We may set aside an unauthorized sentence so a proper sentence may be imposed, even if the new sentence is harsher. (*Ibid.*; see also *People v. Serrato* (1973) 9 Cal.3d 753, 764 [109 Cal.Rptr. 65, 512 P.2d 289], disapproved on another ground in *People v. Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144].)

Otherwise, defendant offers no serious defense of his sentence. He does not challenge section 667.6, subdivision (d), or assert it is inapplicable, or dispute that counts 11 and 12 involve the same victim on separate occasions. He simply states that "the sentence is correct as it stands." It is not, for the reasons stated above.

■ We thus must remand for resentencing. "It is perfectly proper for this court to remand for a complete resentencing after finding an error with respect to part of a sentence . . . ." (*People v. Calderon* (1993) 20 Cal.App.4th 82, 88 [26 Cal.Rptr.2d 31]; accord, *People v. Burns* (1984) 158 Cal.App.3d 1178, 1183–1184 [205 Cal.Rptr. 356].)

## DISPOSITION

The judgment of conviction is affirmed, but the sentence is reversed. The matter is remanded to the trial court for resentencing.

Bedsworth, Acting P. J., and Fybel, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 28, 2010, S180212.