Filed 5/16/16  P. v. Davis CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROGER PAUL DAVIS,<br><br>    Defendant and Appellant. | B261044<br>(Los Angeles County<br>Super. Ct. No.  MA060166) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Frank M. Tavelman, Judge.  Affirmed as modified.

Richard M. Doctoroff, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle and Russell A. Lehman, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Roger Paul Davis appeals his conviction for driving under the influence (DUI), causing bodily injury and great bodily injury (GBI), contending the trial court erred in granting his request for self-representation without inquiring into his mental competence. He further contends his sentence of four years and four months in prison represented cruel and unusual punishment. Respondent contends the court miscalculated presentence custody credits. We amend to correct the custody credit miscalculation and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Information*

Appellant was charged with one count of DUI causing bodily injury (Veh. Code, § 23153, subd. (a).) It was further alleged that appellant refused a request to submit to chemical tests within the meaning of Vehicle Code sections 23577, 23578, and 23538, subdivision (b)(2), and that in the commission of the charged offense he personally inflicted GBI upon Andras Balogh within the meaning of Penal Code section 12022.7, subdivision (a).

B. *Appellant's Request for Self-Representation*

Between July 2013 and January 2014, appellant was represented by the Public Defender's Office. In January 2014, the Public Defender's Office declared a conflict, and a member of the Alternate Public Defender's Office was appointed to represent him. At a pre-trial hearing on February 19, appellant expressed the desire to represent himself with "legal help." The court warned him that if he decided to represent himself, he would get no legal advice either from an attorney or from the court, and that he would be held to the standard of an attorney when arguing, making motions and objections, and questioning witnesses. He was also warned that if his propria persona status were to be revoked midtrial, "that attorney

2

would have to jump in and take over the case at whatever stage it was [at] . . . stuck with whatever damage you've caused at that point . . . ." Appellant stated he understood the court's warnings. The court gave appellant the necessary paperwork and scheduled a further hearing for February 21. After returning the completed paperwork and receiving additional warnings, including that his own incompetence and ineffectiveness would not be the basis for an appeal, appellant withdrew his request and continued to be represented by an alternate public defender in the hearings that followed.

On May 1, 2014, appellant again asked permission to represent himself. The court gave appellant the necessary forms to fill out and reiterated its warnings of the drawbacks of self-representation, stressing that he would be up against an experienced prosecutor with extensive legal training. After appellant completed the four-page "Advisement and Waiver of Right to Counsel" form (CRIM 185 07-08), the court questioned him concerning his understanding of the warnings contained in the documents, which included warnings that he would be required to follow the rules of criminal procedure and the rules of evidence, that he would not receive special consideration from the court, that he would not be given a continuance without good cause, and that he might encounter difficulty preparing his defense or obtaining access to resources while incarcerated. After receiving confirmation from appellant that he understood the dangers of self-representation, the court granted appellant propria persona status. The court's order included the finding that appellant had been deemed competent to represent himself. The court also appointed standby counsel.

Prior to trial, there were several hearings at which appellant presented, and the court granted, motions for discovery, for assistance from an investigator, and

for appointment of an expert.[1]  Appellant filed a *Pitchess* motion, which the court denied as being insufficiently specific,[2] and a *Trombetta* motion based on the destruction of his van, which was also denied.[3]  The matter was continued multiple times, at appellant's request.  Trial commenced in October 2014, nearly six months after appellant obtained propria persona status.

C. *Evidence at Trial*

On May 5, 2013, at approximately 3:00 p.m., Henry Daniels was driving north on 47th Street East in Palmdale, approaching the intersection with Barrel Springs Road.  There were stop signs for traffic on 47th Street, giving traffic on Barrel Springs the right of way.  Daniels observed appellant's Volkswagen van coming southbound on 47th as it approached the intersection.  Appellant was driving erratically, off the road and onto the dirt shoulder.  Appellant's van did not stop at the sign, but entered the intersection, where it was hit by a black car traveling east on Barrel Springs.

Andras Balogh was the driver of the black car.  As a result of the accident, his car was deemed a total loss.  He suffered broken bones in his right hand.  The injuries left his grip strength permanently weakened and his hand sensitive to cold weather.  Balogh also suffered a cracked rib and an injury to his right leg and knee that caused him pain and difficulty walking for several weeks.  The knee continued to bother him at the time of trial, more than a year later.

---

[1]    Appellant also moved to exclude evidence of a prior DUI and a statement he made to an officer at the scene of the accident.  The court deferred ruling, explaining these were issues for trial.  No evidence of appellant's prior DUI was introduced at trial.

[2]    *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

[3]    *California v. Trombetta* (1984) 467 U.S. 479.

4

California Highway Patrol (CHP) Officer Jason Wilber arrived at the accident shortly after it occurred. Officer Wilbur noticed a strong odor of alcohol emanating from appellant, and observed his eyes to be red and watery and his speech to be slurred. The officer conducted a series of field sobriety tests. Appellant exhibited nystagmus (involuntary jerking) of the eyes when asked to keep his gaze on a finger or pen. In addition, he was unable to stand on one leg or walk heel to toe in a straight line without losing his balance. Appellant told the officer he had consumed a 24-ounce "211" beer at approximately 8:00 a.m. Appellant also said that his steering was loose and that he had slowed, but not stopped, at the stop sign before continuing through the intersection. Officer Wilber concluded appellant was under the influence of alcohol. Appellant did not blow sufficient breath into the officer's breathalyzer to produce a reading. When later given the choice of a blood or breath test, appellant chose a blood test, but when taken to a medical center, refused to submit to it.

Appellant did not testify but made an opening statement in which he argued his driving was erratic because a wheel on his van was loose, that Balogh's black car was behind him and hit him from behind, and that he slowly ran the stop sign after making sure no one was approaching the intersection because Balogh was tailgating him. He gave a closing argument in which he questioned the severity of Balogh's injuries, and claimed his destroyed van would have supported his version of the accident. Appellant cross-examined Daniels, Balogh and Officer Wilber, but did not call any defense witnesses. His proffered documentary evidence, including the CHP's collision report, was excluded as hearsay.

D. *Verdict and Sentence*

The jury found appellant guilty of DUI causing injury and found the special allegations of GBI and failure to complete a chemical test true. The court

5

sentenced appellant to imprisonment for four years, four months consisting of the low term of 16 months for the Vehicle Code section 23153, subdivision (a) violation, plus three years for the Penal Code section 12022.7, subdivision (a), GBI finding.[4]  This appeal followed.

## DISCUSSION

A.  *Appellant's Competence to Represent Himself*

In *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*), the U.S. Supreme Court held that the Sixth Amendment gives criminal defendants the right to represent themselves, provided they "'knowingly and intelligently'" forego the benefits of counsel after being made aware of the dangers and disadvantages of self-representation.  (*Faretta, supra,* 422 U.S. at p. 835; see *People v. Johnson* (2012) 53 Cal.4th 519, 525-526.)  For many years, California courts interpreted *Faretta* as precluding state courts from imposing on defendants seeking to waive counsel a standard of competence higher than that imposed in determining their competence to stand trial.  (See, e.g., *People v. Welch* (1999) 20 Cal.4th 701, 732, overruled in part on another ground in *People v. Blakeley* (2000) 23 Cal.4th 82; *People v. Blair* (2005) 36 Cal.4th 686, 711, disapproved in part on another ground in *People v. Black* (2014) 58 Cal.4th 912; *People v. Hightower* (1996) 41 Cal.App.4th 1108, 1111, 1116 [because trial court found defendant competent to stand trial, "it necessarily follow[ed]" that court erred in denying his motion for self-representation on ground of mental incompetence].)  This understanding prevailed until the Supreme Court's decision in *Indiana v. Edwards* (2008) 554

---

[4]     Although the probation office's pre-conviction report recommended probation, the court concluded appellant was ineligible for probation in the absence of a finding that his case was an "unusual" one, and "[did not] find anything that would justify this being an unusual case."

6

U.S. 164, 178 (*Edwards*), holding that "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves."[5]

Appellant has never claimed to lack mental competence to stand trial. However, citing *Edwards*, he now claims he lacked sufficient mental competence to knowingly, intelligently and voluntarily waive his right to counsel, and that the court erred in failing to make an inquiry into his mental state prior to granting his request to represent himself. For the reasons discussed below, we disagree.

As explained by our Supreme Court in *People v. Taylor* (2009) 47 Cal.4th 850, *Edwards* permits, but does not mandate, the application of a dual standard: "The *Edwards* court held . . . that states *may*, without running afoul of *Faretta*, impose a higher standard" for gray-area defendants who wish to represent themselves at trial. (*Taylor, supra,* 47 Cal.4th at pp. 877-878.) "'In other words, *Edwards* did not alter the principle that the federal constitution is not violated when a trial court permits a mentally ill defendant to represent himself at trial, even if he lacks the mental capacity to conduct the trial proceeding himself, if he is competent to stand trial and his waiver of counsel is voluntary, knowing and intelligent.'" (*Id.* at p. 878, quoting *State v. Connor* (2009) 292 Conn. 483 [973 A.2d 627, 650].) Thus, the holding in *Edwards* "does not support a claim of federal constitutional error in a case . . . in which defendant's request to represent himself was granted." (*Taylor, supra,* 47 Cal.4th at p. 878.)[6]

---

[5] The Court called defendants deemed competent to stand trial but not to represent themselves "gray-area defendants." (*Edwards, supra,* 554 U.S. at p. 174.)

[6] In so holding, the Court affirmed the conviction of the defendant, who had been permitted to represent himself despite a long history of cocaine dependence and findings of low average intelligence and deficits in his reasoning and abstract thinking. (*People v. Taylor, supra,* 47 Cal.4th at pp. 860-861.)

7

Subsequently, in *Johnson, supra,* 53 Cal.4th 519, the Court upheld a trial court ruling denying self-representation to a defendant who appeared delusional and paranoid, but had been found competent to stand trial. The Court held that trial courts have discretion to deny self-representation to gray-area defendants "in those cases where *Edwards* permits such denial." (*People v. Johnson, supra,* at p. 528.) The court went on to explain that "pending further guidance from the high court, . . . the standard that trial courts considering exercising their discretion to deny self-representation should apply is . . . whether the defendant suffers from a severe mental illness to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel." (*Id.* at p. 530.) The court stressed that "[t]rial courts must apply this standard cautiously": "Criminal defendants still generally have a Sixth Amendment right to represent themselves. Self-representation by defendants who wish it and validly waive counsel remains the norm and may not be denied lightly. A court may not deny self-representation merely because it believes the matter could be tried more efficiently, or even more fairly, with attorneys on both sides. Rather, it may deny self-representation only in those situations where *Edwards* permits it." (*Id.* at p. 531.)

Applying these authorities to the instant case, we find nothing to support appellant's contention that he was a gray-area defendant, competent to stand trial but not to represent himself, or that inquiry into that possibility was required by information known to the trial court. At no point during the proceedings below was any question raised concerning appellant's competence. He was represented by counsel for nine months, first by attorneys in the Public Defender's Office and then by attorneys with the Alternate Public Defender's Office. None of the attorneys representing him suggested appellant had difficulty understanding them or assisting in his defense. Nor did any express doubt as to his competence. (See *People v. Gardner* (2014) 231 Cal.App.4th 945, 953-955 [court denied appellant's

motion to discharge appointed counsel after a hearing initiated by counsel informing court she had doubts about his mental competence].)  Nor did appellant exhibit to the court the type of bizarre behavior or odd comments that might have suggested a mental illness or other deficiency.[7]  (See *People v. Johnson*, *supra*, 53 Cal.4th at p. 524 [court expressed doubt about defendant's competence due to unusual behavior and tone of letters written to court and others].)  Appellant satisfactorily completed the four-page form affirming his understanding of the dangers and disadvantages of self-representation.  He confirmed this understanding at three separate hearings.  Following the grant of his request, he filed multiple articulate motions, some of which were granted.  During trial and pretrial, he conducted himself appropriately in front of the judge and jury.  He demonstrated his understanding of the charges, providing his own explanation for the accident that contradicted the prosecution's theory and questioned the severity of Balogh's injuries.  Penal Code section 1369 provides that unless the preponderance of the evidence supports a different finding, it shall be "presumed that the defendant is mentally competent . . . ."  (Pen. Code, § 1369, subd. (f).)  Nothing in the record of the proceedings below contradicts that presumption.

Appellant contends the probation office's pre-conviction report "revealed a long history of alcohol and drug abuse arrests and convictions" that should have prompted an inquiry into his competence.  If a trial court is presented with evidence creating a reasonable doubt about the defendant's competence to stand

---

[7]     In *Edwards*, the U.S. Supreme Court quoted with approval the amicus curiae brief of the American Psychiatric Association, agreeing that a defendant who is marginally mentally competent may suffer from "'[d]isorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety, and other common symptoms of severe mental illnesses,'" impairing the "'ability to play the significantly expanded role required for self-representation even if he can play the lesser role of represented defendant.'" (*Edwards, supra,* 554 U.S. at p. 176.)  Appellant displayed none of these behaviors.

trial, it is "require[d] . . . to suspend proceedings and conduct a competency hearing . . . ." (*People v. Blair*, *supra*, 36 Cal.4th at p. 711.) However, no such rule applies to defendants in the gray-area seeking to represent themselves. "A trial court need not routinely inquire into the mental competence of a defendant seeking self-representation." (*People v. Johnson*, *supra*, 53 Cal.4th at p. 530; see *People v. Miranda* (2015) 236 Cal.App.4th 978, 988 [in the absence of evidence defendant lacked competence to stand trial, court had no obligation to interrupt trial to determine his competence to represent himself after hearing evidence indicating he suffered from mental illness].) As the Supreme Court stated in *People v. Taylor,* a trial court's decision to permit a defendant lacking the mental capacity to represent himself at trial "does not support a claim of federal constitutional error . . . ." (*People v. Taylor, supra*, 47 Cal.4th at p. 878.) Here, the pre-conviction report showed that appellant had suffered a 2012 arrest for being under the influence of alcohol or drugs and a 2008 conviction for DUI. The only other substance-related conviction occurred in 1988, 25 years earlier, and the only other substance-related arrest occurred in 2004, nearly ten years earlier. This record does not support such extensive alcohol or drug use that permanent impairment should have been presumed.

Appellant also points to a letter submitted by his father, post-trial, at the sentencing hearing, stating that appellant had been "labeled with schizophrenia." The letter itself is not substantial evidence that appellant suffered a serious mental disorder. Moreover, "even a history of serious mental illness does not necessarily constitute substantial evidence of incompetence that would require a court to declare a doubt concerning a defendant's competence and to conduct a hearing on that issue." (*People v. Blair*, *supra*, 36 Cal.4th at p. 714.) "[T]o be entitled to a competency hearing, 'a defendant must exhibit more than . . . a preexisting psychiatric condition that has little bearing on the question . . . whether the

10

defendant can assist his defense counsel.'" (*People v. Rogers* (2006) 39 Cal.4th 826, 847, quoting *People v. Ramos* (2004) 34 Cal.4th 494, 508.) Even assuming appellant had been diagnosed with schizophrenia sometime in the past, his behavior during trial and pretrial proceedings established that nothing prevented him from acting with the mental acuity necessary to represent himself. The trial court did not err by granting appellant's motion to discharge counsel and proceed in propria persona without making inquiry into his competence.

   B. *Cruel and Unusual Punishment*

   The trial court imposed the low term of 16 months for the Vehicle Code section 23153, subdivision (a) violation, plus three years for the GBI finding. Appellant contends his sentence of four years, four months constitutes cruel and unusual punishment under both the state and federal constitutions. As respondent notes, by failing to raise the issue in the trial court, appellant forfeited this claim on appeal. (*People v. Em* (2009) 171 Cal.App.4th 964, 972, fn. 5.) Although appellate courts generally address the merits "'to prevent the inevitable ineffectiveness-of-counsel claim'" (*ibid.*, quoting *People v. Norman* (2003) 109 Cal.App.4th 221, 229), appellant is precluded from relying on his own ineffectiveness. (See *People v. Lopez* (1977) 71 Cal.App.3d 568, 574.)

   Moreover, on the merits, we find the sentence imposed constitutional. Appellant's offense was a serious one. Balogh was badly injured, and he or appellant could easily have been killed. The punishment imposed was not "'grossly disproportionate to the severity of the crime.'" (*Ewing v. California* (2003) 538 U.S. 11, 20-21.) Nor did it "'shock the conscience of reasonable men,'" which requires a showing, among other things, of disproportionate punishment for similar offenses in the same jurisdiction or the same offense in other jurisdictions. (*In re Lynch* (1972) 8 Cal.3d 410, 424, 426-427.) Appellant

11

suggests otherwise, but does not attempt to make the necessary disproportionality showing. (See *People v. Wingo* (1975) 14 Cal.3d 169, 183 [defendant bears burden of demonstrating sentence is disproportionate and/or excessive].)

Claiming to be an alcoholic and schizophrenic, appellant contends that imprisonment for any period was inappropriate, and that he should instead have been placed in a treatment program. We are aware of no authority for the proposition that a defendant who suffers from such disorders, but is fit for trial, should escape punishment after committing a crime.[8] The decision to punish rather than treat those who drive a vehicle while intoxicated is a rational choice made by the Legislature.[9] The multi-year sentence imposed on appellant for causing GBI while drunk driving is not overly severe. "The drunk driver cuts a wide swath of death, pain, grief, and untold physical and emotional injury across the roads of California and the nation. The monstrous proportions of the problem have often been lamented in graphic terms by this court and the United States Supreme Court. [Citations.] . . . Given this setting, our observation that '[d]runken drivers are extremely dangerous people' [citation] seems almost to understate the horrific risk posed by those who drink and drive." (*Burg v. Municipal Court* (1983) 35 Cal.3d 257, 262, quoting *Taylor v. Superior Court* (1979) 24 Cal.3d 890, 899.) In view of

---

[8] To the contrary, courts have consistently rejected the claim that it is unconstitutional to punish conduct occasioned by the compulsion of alcoholism or addiction. (See, e.g., *People v. Kellogg* (2004) 119 Cal.App.4th 593, 596.)

[9] The contention that a defendant who drove under the influence of drugs was entitled to probation and enrollment in a drug treatment under Proposition 36 was rejected by our Supreme Court in *People v. Canty* (2004) 32 Cal.4th 1266, 1274.) The court recognized that the DUI offense "primarily is concerned not with the offender's use of the proscribed substance, but with his or her use of a motor vehicle" and "concerns the driver's activity as it actually or potentially affects or 'transacts' with other persons." (*Canty, supra,* 32 Cal.4th at p. 1279.) "In proscribing driving while under the influence, the . . . legislative purpose is to protect the public and guard against the threat of injury to others." (*Ibid*., italics omitted.)

the dangerousness of appellant's conduct and his record of similar offenses, his claim that a low-term sentence totaling less than five years' imprisonment was excessive, disproportionate, or otherwise unconstitutional must be rejected.

C. *Calculation of Presentence Custody Credits*

In imposing sentence, the trial court awarded appellant 778 days of presentence custody credit, consisting of 519 days of actual custody and 259 days (one-half of 519) of good time/work time credit. Respondent notes that under Penal Code section 2933.1, appellant's conduct-based credits were limited to no more than 15 percent of his actual days in custody, or 77 days.[10] As explained in *People v. Delgado* (2010) 181 Cal.App.4th 839, "the Attorney General may raise the sentencing error for the first time in connection with defendant's appeal," and appellate courts "may set aside an unauthorized sentence so a proper sentence may be imposed, even if the new sentence is harsher. [Citations.]" (*Delgado, supra,* 181 Cal.App.4th at p. 854; accord, *In re Renfrow* (2008) 164 Cal.App.4th 1251, 1256.) Appellant does not dispute respondent's calculation of the appropriate credits.

---

[10]     Penal Code section 2933.1, subdivision (a) provides: "Notwithstanding any other law, any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue no more than 15 percent of worktime credit . . . ." Penal Code section 667.5, subdivision (c)(8) lists "[a]ny felony in which the defendant inflicts great bodily injury on any person other than an accomplice which has been charged and proved as provided for in Section 12022.7 . . . ."

**DISPOSITION**

The judgment is modified to reflect 596 days of presentence custody credit, consisting of 519 days of actual credit and 77 days of good time/work time credit. In all other respects the judgment is affirmed. The superior court is directed to prepare an amended abstract of judgment to reflect this modification and to forward a copy to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:



EPSTEIN, P. J.



WILLHITE, J.